# In the United States Court of Appeals For the Fifth Circuit

---

No. 24-60373

---

SPIRIT AIRLINES, INC.,

*Petitioner,*

*v.*

UNITED STATES DEPARTMENT OF TRANSPORTATION,

*Respondent.*

---

On Petition for Review of a Final Rule of the
U.S. Department of Transportation
Agency No. 89 Fed. Reg. 34620

---

**Emergency Motion for Administrative Stay, for Stay Pending Review, and Notice of Joinder**

---

Joanne W. Young
*Counsel of Record*
David M. Kirstein
Donald L. Crowell III
KIRSTEIN & YOUNG PLLC
1750 K Street NW, Suite 700
Washington, DC  20006
(202) 331-3348

*Counsel for Spirit Airlines, Inc. and
Frontier Group Holdings, Inc.*

## CERTIFICATE OF INTERESTED PERSONS

**No. 24-60373**, *Spirit Airlines, Inc. v. U.S. Department of Transportation*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

Crowell, Donald L., Counsel for Petitioner and Proposed Intervenor

Frontier Group Holdings, Inc., Proposed Intervenor

Geier, Paul M., Counsel for Respondent

Indigo Frontier Holdings Company, LLC, majority beneficial owner of Proposed Intervenor

Iyer, Subash, Counsel for Respondent

Kirstein, David M., Counsel for Petitioner and Proposed Intervenor

Kirstein & Young PLLC, Counsel for Petitioner and Proposed Intervenor

Spirit Airlines, Inc., Petitioner

Totaro, Martin, Counsel for Respondent

U.S. Department of Transportation, Respondent

Young, Joanne W., Counsel for Petitioner and Proposed Intervenor

Petitioner Spirit Airlines, Inc. is a publicly traded corporation with its stock publicly listed under the ticker "SAVE". It has no parent corporation. No publicly held corporation holds 10% or more of its stock.

Proposed Intervenor Frontier Group Holdings, Inc. is a publicly traded corporation with its stock publicly listed under the ticker "ULCC". It has no parent corporation. No publicly held corporation holds 10% or more of its stock.

Dated: July 26, 2024                   Respectfully submitted,

/s/ Joanne W. Young
Joanne W. Young

*Counsel for Spirit Airlines, Inc. and
Frontier Group Holdings, Inc.*

# TABLE OF CONTENTS

**Page**

I.   Introduction ................................................................................................ 1

II.  Background ................................................................................................. 6

III. Legal Standard .......................................................................................... 8

IV.  Joinder in Airlines for America, et al. Motion for Stay ......................... 9

V.   Argument ................................................................................................... 9

    A.   The Low-Cost Airlines are likely to succeed on the merits. ...................... 9

        1.   Congress abolished Government authority to mandate the time, place, and manner of publishing pricing information for ancillary services. ......................................................................... 10

            a.   The Rule creates a penalty for not publishing ancillary service pricing at the time, place, and in the manner required by the Government, exactly like a pre-Deregulation tariff. ............................................................ 12

            b.   "Improving the disclosure of fees" cannot be a basis to support the Department putting airlines out of business. . 12

            c.   The Department previously observed that prohibited conduct under section 41712 requires deception or threats to competition. ...................................................... 13

        2.   The Rule violates the First Amendment by restricting truthful advertising of standalone airfare tickets and compelling airlines to sell and advertise add-on products not required for air travel. ................................................................................................. 15

            a.   There is no substantial government interest in restricting the sale of lawful transportation products (*e.g.* a travel ticket that does not include Optional Services). ................ 16

b.  No harm results from showing consumers accurate prices for air travel which does not include Optional Services. ... 17

3.  The Rule violates the Administrative Procedure Act.................... 18

a.  The Department failed to reasonably consider its fundamental competition mandates.................................. 18

b.  The Department failed to reasonably analyze the Rule's disparate costs to smaller carriers and the traveling public.................................................................................. 20

B.  The Low-Cost Airlines face existential, unrecoverable, and disproportionate irreparable harm, which supports granting a stay...... 22

C.  The public interest and the Government will not be harmed by pausing implementation of an unprecedented rule. .............................. 23

VI.  Conclusion......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) ................................................ 10

*Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220 (5th Cir. 2024). 25, 26

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980) ...... 17

*ExxonMobil Pipeline Co. v. U.S. Dept. of Transportation*, 867 F.3d 564 (5th Cir. 2017) ................................................................................................................... 21

*Friedman v. Rogers*, 440 U.S. 1 (1979) .................................................................. 17

*Huawei Technologies v. FCC*, 2 F.4th 421 (5th Cir. 2021). .................................... 23

*Illinois Corp. Travel v. American Airlines, Inc.*, 889 F.2d 751 (7th Cir. 1989) ....... 16

*In re Abbott*, 800 Fed. Appx. 296 (5th Cir. 2020) .................................................... 3

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ................................... 20

*M.D. by Stukenberg v. Abbott*, No. 18-40057 (5th Cir. Jan. 19, 2018) .................. 3

*Mexican Gulf Fishing Co. v. U.S. Dep't of Commerce*, 60 F.4th 956 (5th Cir. 2023) ........................................................................................................................ 21, 23

*Michigan v. EPA*, 576 U.S. 743 (2015) .................................................................. 21

*Morales v. Trans World Airlines*, 504 U.S. 374 (1992) ......................................... 16

*N.Y. Stock Exch. LLC v. SEC*, 962 F.3d 541 (2020) ............................................... 10

*Nat'l Assoc. of Priv. Fund Mgrs. v. SEC*, Case No. 23-60471 (5th Cir., June 5, 2024) ................................................................................................................... 10

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................ 9, 26

*Serono Labs., Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998) .............................. 27

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ................................................... 18

*Spirit Airlines, Inc. v. Dep't of Transport.*, 997 F.3d 1247 (D.C. Cir. 2021) ........... 23

*Stone v. INS*, 514 U.S. 386 (1995) ................................................................. 13, 14

*Sullivan v. Zebley*, 493 U.S. 521 (1990) ................................................................ 10

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) ......................................................... 25

*Trailways of New England, Inc. v. Civil Aeronautics Bd.*, 412 F.2d 926 (1st Cir. 1969) ...................................................................................................... 12

*Transcon. Bus Sys., Inc. v. Civil Aeronautics Bd.*, 383 F.2d 466 (5th Cir. 1967) .. 12, 15, 24

*United States v. Wells*, 519 U.S. 482 (1997) ......................................................... 13

*Valentine v. Collier*, 956 F.3d 797 (5th Cir. 2020) (per curiam) .............................. 9

*Wages & White Lion Invs., L.L.C. v. United States FDA*, 16 F.4th 1130 (5th Cir. 2021) ......................................................................................................... 9

## Statutes

49 U.S.C. § 40101 ............................................................................................. 15, 19

49 U.S.C. § 41109 .................................................................................................. 15

49 U.S.C. § 41712 ....................................................................................... i, 11, 13, 14

49 U.S.C. § 46110(c) ............................................................................................. 1, 3

## Other Authorities

124 Cong. Rec. H38521 (Oct. 14, 1978) (Statement of Rep. Anderson) ............... 6

124 Cong. Rec. H38525-26 (Oct. 14, 1978) (Statement of Rep. Harsha) .............. 6

124 Cong. Rec. S37418 (Oct. 14, 1978) (Statement of Sen. Kennedy) ................. 7

Capitol International, Enforcement, 89 C.A.B. 27; 1981 CAB LEXIS 404 (Apr. 16, 1981) ..................................................................................................... 11

*House Committee on Public Works and Transportation Report* on the *Civil Aeronautics Board Sunset Act of 1983*, H. Rep. No. 98-793 (May 21, 1984) .... 14

Order 72-6-49, C.A.B. Docket 21385 (June 12, 1972) .......................................... 13

Order 92-5-60, Dep't of Transport. Dockets 46280 & 47539 (May 29, 1992) ...... 14

## Rules

Fed. R. App. Proc. 18 ............................................................................................... 1

Fed. R. App. Proc. 28(i) ........................................................................................... 9

## Regulations

14 C.F.R. § 399.85(b) .............................................................................................. 17

*Enhancing Transparency of Airline Ancillary Service Fees*, 89 Fed. Reg. 34620 (Apr. 30, 2024) ............................................................................................ passim

## Legislation

Airline Deregulation Act of 1978, Pub. L. 95-504, 92 Stat. 1705 (Oct. 24, 1978) ... 4

Federal Aviation Act of 1958, Pub. L. 85-726, 72 Stat. 731 (1958) ..... 11, 12, 13, 15

## I.   Introduction

Spirit Airlines, Inc. (Spirit) and Frontier Group Holdings, Inc. (Frontier)[1] ask this Court on an emergency basis to stay the U.S. Department of Transportation Final Rule titled *Enhancing Transparency of Airline Ancillary Service Fees*, 89 Fed. Reg. 34620 (Apr. 30, 2024) (the Rule) immediately pending further judicial review. Under 49 U.S.C. § 46110(c), "the court may grant interim relief by staying the order or taking other appropriate action when good cause for its actions exists." *Accord* Fed. R. App. Proc. 18. Spirit and Frontier (collectively the Low-Cost Airlines) together face over **$1.25 billion in irreparable harm** and a potential **civil penalty liability exceeding $15 billion[2] per day** if even partial compliance could be achieved by the Rule's arbitrary October 2024 and April 2025 deadlines. The government mandate requires airlines to completely reinvent their information technology, sales, marketing, and product distribution infrastructure.

The Low-Cost Airlines request the Court grant an administrative stay immediately and a stay pending review by August 15, 2024, so these airlines can continue urgently-required customer-serving technology upgrades and avoid withdrawing

---

[1] Frontier is seeking intervention through a contemporaneously filed motion. Frontier joins in this Spirit motion for Emergency Relief as a proposed Petitioner-Intervenor.

[2] Based on 2023 passengers flown for Spirit (44,105,000) and Frontier (30,218,000) in 10K.

- 1 -

ticket sales from third-party ticket agents, accounting for more than $1 billion in revenue annually. Absent this Court issuing a stay, the Low-Cost Airlines face an existential threat because full compliance with the Rule is impossible.

The Rule attempts to regulate extraordinary swaths of the aviation economy by forcing airlines, with just a few months' notice, to reinvent their sales, distribution, and marketing technology which has served to the satisfaction of hundreds of millions of passengers for almost two decades.

The Rule is unprecedented in its scope and restrictiveness. It goes beyond any regulation the Department or its predecessor, the Civil Aeronautics Board, attempted—even before Congress deregulated government control over the airline industry. Leaving the Rule in place will directly harm consumers by withdrawing the lowest-cost travel options from travel agencies and imposing substantial penalties on Spirit and Frontier when they are unable to comply with the Rule's arbitrary deadlines.

An administrative stay is warranted. "Entering temporary administrative stays so that a panel may consider expedited briefing in emergency cases is a routine practice…." *E.g.*, *In re Abbott*, 800 Fed. Appx. 296, 298 (5th Cir. 2020) (citing *M.D. by Stukenberg v. Abbott*, No. 18-40057, ECF 12 (5th Cir. Jan. 19, 2018) (Dennis,

Southwick, and Higginson, JJ.) (granting "temporary, administrative stay . . . to provide sufficient time to receive any opposition and fairly consider whether a formal stay pending appeal should issue or whether this temporary stay should be dissolved")); *see also* 49 U.S.C. § 46110(c)("[T]he court may grant interim relief by staying the order or taking other appropriate action when good cause for its actions exists."). The circumstances here include the survival of the Low-Cost Airlines as they attempt to meet the impossible Rule compliance deadlines, which would derail critically-needed infrastructure upgrades. Pausing while this Court considers more permanent action is appropriate.

A stay pending review is warranted. The Low-Cost Airlines are likely to prevail on the merits for several reasons. *First*, the Department lacks authority to dictate the time, place, and manner of publishing baggage pricing information. Congress abolished any prior authority the Government held in this area beginning with the passage of the Airline Deregulation Act of 1978. Pub. L. 95-504, 92 Stat. 1705 (Oct. 24, 1978) (Deregulation Act).

*Second*, the Rule violates the First Amendment by restricting airlines and ticket agents from truthfully advertising the price of standalone airfare tickets, when less restrictive means exist and are already in place to provide consumers information regarding optional ancillary services and products (Optional Services). This

is available on a first-look basis through prominent links on both airlines' websites. Current practices do not harm the asserted government interest in ensuring consumers who want Optional Services know the price before purchasing a flight.

*Third*, the Rule is arbitrary and capricious. The Department failed to consider the statutory mandates and legislative history of Airline Deregulation legislation requiring maximum reliance on low-cost competition from carriers like Frontier and Spirit. The cost-benefit analysis of the Rule ignored the cost (and harm) resulting from the impossible timelines to re-invent airline technology infrastructure just to provide information for Optional Services at a government-specified time, place, and manner, and on a real-time basis millions of times each day. The Department also ignored the cost to airlines and consumers when airlines must stop selling tickets through third-party ticket agents because of the impossibility to timely comply with the Rule.

The Low-Cost Airlines can establish irreparable injury. Spirit faces compliance-related harms estimated at over $250 million. Frontier faces compliance-related harms estimated at over $1 billion. This damage has started and threatens the survival of both companies. Before the Rule was issued, Spirit planned major upgrades to its customer-facing IT systems, and its relationship with its principal third-party vendor contractually limits any work it can do for Rule compliance between

October 2024 and January 2025. If Spirit does not make these changes, it will not be able to support current reservation demand, let alone the exponential increase in price/fee searches the Rule's requirements will cause. If the Rule is implemented, absent major upgrades even beyond that currently contemplated, Spirit's systems for fare information, ticket reservations, refunds, loyalty program, websites and mobile applications, airport boarding and ticketing, baggage handling and tracking, and customer service channels will become too slow or impossible for customers to use.

Frontier, even if it had unlimited financial resources, is not able to provide ticket agents (accounting for approximately 28% of its annual revenue) with the amount of real-time Optional Services pricing information required under the Rule's October 2024 deadline. Frontier will be forced to stop selling tickets through these channels cutting off over $1 billion in annual revenue. The millions of customers who previously purchased Frontier tickets through these channels will no longer have access to low fares on their preferred websites without guarantee these customers would look elsewhere for Frontier flights.

A stay protects the public from the loss of access to air travel from the Low-Cost Airlines. No harm will come to the Department by pausing implementation of the Rule pending review. The Court should grant a stay.

## II.  Background

Before 1978, airline routes and fares were regulated like a utility requiring Government approval. All airline prices and associated components were required to be in Government-approved Tariffs and available at the airport. Bargain travel was virtually non-existent. The Airline Deregulation Act of 1978, 92 Stat. 1705, abolished Government regulation over carrier routes, pricing, services, tariffs and the airport notice requirement.

The Deregulation Act promoted to the maximum extent possible competitive forces to improve service, stimulate innovation, and lower fares in an industry historically "*constrained by excessive regulation*" and "*bureaucracy.*" 124 Cong. Rec. H38525-26 (Oct. 14, 1978) (Statement of Rep. Harsha). During passage of the Deregulation Act, House Transportation Committee Chairman Glenn Anderson stated it "requires the [Department] to place maximum reliance on actual and potential competition; to encourage entry by new carriers; to strengthen small air carriers; and to encourage low-fare service." 124 Cong. Rec. H38521 (Oct. 14, 1978) (Statement of Rep. Anderson).

Since 1978, deregulation and its dramatic lowering of airline prices has brought record numbers of passengers each year into the air, fulfilling the Congressional goal of bringing "[e]ntirely new groups of consumers previously precluded

from air travel due to high costs … in the market for airline tickets." 124 Cong. Rec.

S37418 (Oct. 14, 1978) (Statement of Sen. Kennedy). The sale and advertising of

unbundled fares and ancillary products—allowing travelers to buy only what they

specifically need or want—have been a mainstay of the industry since 2010.

In passing the Rule, the Department took the first step towards slamming the

door on an era of innovation and free-market competition. Contrary to the mandates

of deregulation, the Rule intrudes on existential aspects of the Low-Cost Airlines'

business models. As relevant here, the Rule outlined these requirements.:

- "Each … carrier that provides fare, schedule, and availability information for air transportation within, to, or from the United States to [ticket agents] … must disclose fee and policy information for critical ancillary fee services to that entity. … [in a form that is] useable, current, accurate, and sufficient to ensure compliance by such entities." 89 Fed. Reg. at 34677.

- Policies for critical ancillary services must be disclosed before ticket purchase when a search is conducted online;

- Fees cannot be displayed through a hyperlink;

- Carriers and ticket agents selling airline tickets must disclose critical ancillary service fees on the first page of their online platforms where consumers are directed after searching flight options on other online platforms;

- Carriers and ticket agents must disclose fees for critical ancillary services as passenger-specific itinerary information if a consumer conducts a passenger-specific itinerary search;

- Airlines and ticket agents must disclose fees and policies for critical ancillary services on airlines' or ticket agents' online platforms;

As the Rule indicates, "[c]arriers selling tickets in the United States **already display baggage fees, and any ticket restrictions information on their websites**, as required by existing regulation (14 CFR 399.85(d))." 89 Fed. Reg. at 34673 (emphasis added).

On June 5, 2024, Spirit requested the Department stay the effective date and compliance periods of the Rule. The Department denied Spirit's request on June 28, 2024. Spirit filed its petition for review on June 28, 2024, in the Eleventh Circuit where venue existed. The Eleventh Circuit thereafter transferred this case to the Fifth Circuit, and it was docketed on July 23, 2024.

### III. Legal Standard

In deciding whether to grant a stay pending review, this Court "must consider four factors: (1) whether the requester makes a strong showing that it's likely to succeed on the merits; (2) whether the requester will be irreparably injured without a stay; (3) whether other interested parties will be irreparably injured by a stay; and (4) where the public interest lies." *Wages & White Lion Invs., L.L.C. v. United States FDA*, 16 F.4th 1130, 1135 (5th Cir. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)). "The first two factors are the most critical" *id.* (quoting *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (per curiam).

### IV.  Joinder in Airlines for America, et al. Motion for Stay

To reduce the burden on the Court, avoid repetitious arguments, and expedite the Court's review of stay pending review, the Low-Cost Airlines join in and adopt by reference the arguments raised in the Motion for Stay filed by Petitioners Airlines for America, et al. (A4A) in Case No. 24-60231 (Doc. 31, June 14, 2024), to the extent permitted by the Federal Rules of Appellate Procedure and the Fifth Circuit Rules. *See* Fed. R. App. Proc. 28(i).

### V.  Argument

**A.  The Low-Cost Airlines are likely to succeed on the merits.**

When an agency acts pursuant to its rulemaking authority, a reviewing court determines whether the resulting regulation exceeds the agency's statutory authority or is arbitrary and capricious. *N.Y. Stock Exch. LLC v. SEC*, 962 F.3d 541, 546 (2020) (citing *Sullivan v. Zebley*, 493 U.S. 521, 528 (1990)); As this Court recently held, "where 'Congress wanted to provide for' reporting and disclosure of certain information, 'it did so explicitly.'" *Nat'l Assoc. of Priv. Fund Mgrs. v. SEC*, Case No. 23-60471 (5th Cir., June 5, 2024) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 440 (2002)).

1.  **Congress abolished Government authority to mandate the time, place, and manner of publishing pricing information for ancillary services.**

The Deregulation Act abolished Government authority to require airlines to publish prices for fares and ancillary services at specific times, places, and in specific ways. Under Section 403 of the Civil Aeronautics Act of 1934, and later as re-enacted in the Federal Aviation Act of 1958, Pub. L. 85-726, 72 Stat. 731 (1958) (FAA Act), the Government had authority to require airlines to provide public notice of "all rates, fares, and charges for air transportation."

Through section 403(a) of the FAA Act, the Government "require[d] carriers to disclose specific information to passengers" regarding charges for air transportation, whether by publication or by "imposing special notice requirements with respect to any specific tariff rule." Order 81-8-30, CAB Docket 37481 (Aug. 6, 1981). This included placing required information on the face of a ticket or at places where customers interacted with the airline (*e.g.*, at airport and ticket sales offices).

Section 404 of the FAA Act made it a violation for airlines to provide any component of air travel without first publishing its price, terms, or policies in a tariff or in compliance with any special notice requirements established by the Board.

Under section 1002(d), the Board reviewed alleged violations of sections 404 and 403, after "notice and hearing," to determine whether a practice was "unjust,

unreasonable, unduly preferential and prejudicial, unjustly discriminatory and otherwise unlawful." *Trailways of New England, Inc. v. Civil Aeronautics Bd.*, 412 F.2d 926, 928 (1st Cir. 1969); *accord Transcon. Bus Sys., Inc. v. Civil Aeronautics Bd.*, 383 F.2d 466, 473 (5th Cir. 1967).

Section 411 of the FAA Act, now 49 U.S.C. § 41712, authorized the Board to prevent unfair and deceptive practices and unfair methods of competition after notice and hearing. It never authorized the Government to require publication of pricing information. Under section 411, the Board enforced against conduct **other than whether price was published**, such as the truthfulness of advertising air travel services or the misrepresentation of the terms and conditions of its services. The history of Board enforcement action is consistent with this understanding. *See, e.g.*, Capitol International, Enforcement, 89 C.A.B. 27; 1981 CAB LEXIS 404 (Apr. 16, 1981). Sections 403, 404, and 411 were abolished in part or in whole following passage of the Deregulation Act.

Removal of Section 403 and 404 authority was consistent with the Congressional intent to promote innovation, such as offering the public unbundled, lower-cost air fare and services. "*When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.*" *Stone v. INS*, 514 U.S. 386, 397 (1995) (citations omitted). Even the removal of a single, material word

must be given meaning, as the "most likely inference in these circumstances is that Congress deliberately dropped the term." *United States v. Wells*, 519 U.S. 482, 493 (1997) (cited by Scalia & Garner, at 257).

>    a.    **The Rule creates a penalty for not publishing ancillary service pricing at the time, place, and in the manner required by the Government, exactly like a pre-Deregulation tariff.**

The Rule ignores the purpose of deregulation by mandating specifically how and where airlines publish pricing for specific air transportation service components. This re-establishes the Department's view of an "idealized" standard product for air travel contrary to Congressional intent. By dictating how airlines display **services not required for a customer to fly**, the Department acts as if it retained its authority to regulate how prices are presented and sold from pre-Deregulation days. In doing so, the Department fails to give "*real and substantial effect*" to acts of Congress. *Stone*, 514 U.S. at 397.

>    b.    **"Improving the disclosure of fees" cannot be a basis to support the Department putting airlines out of business.**

The Department focus on "critical ancillary services" under the Rule is not a new concept. The idea matches the pre-Deregulation CAB rules mandating certain services be included in published fares – as A4A explains, in a specific format, at a specific time, and in a specific manner. The CAB single-rate system similarly encompassed many services other than transportation itself, including carry-on baggage;

checked baggage; reserved seats; cancellation/change/no-show fees; and others. *See, e.g.*, Order 72-6-49, C.A.B. Docket 21385 (June 12, 1972) (discussing CAB regulations for fare disclosures under Section 403).

Congress rejected this mandated practice through passage of the ADA and CAB Sunset Act of 1984. By contradicting Congressional intent against standardized fares, the Department harms the smaller, low-cost carriers it is directed to support, and the innovation they introduce, along with price-sensitive travelers who rely on them. "[W]hile the [Department] has acquired an expertise in matters relating to air transportation, that expertise does not extend to and include all the social policy factors which it here argues it may evaluate and consider." *Transcon. Bus Sys., Inc.*, 383 F.2d at 484.

> c. **The Department previously observed that prohibited conduct under section 41712 requires deception or threats to competition.**

Section 41712, like section 411 of the FAA Act from which it originated, does not authorize the Department to mandate specifically how airlines present pricing information. How an entity promotes and sells its products is the *sine qua non* of a competitive marketplace. In 1992, seven years after passage of the CAB Sunset Act, the Department observed that unfair and deceptive practices contemplated in Section 411 required some form of deception or threat to airline competition.  It stated:

> The Association's petition assumes in large part that we should prohibit practices considered unfair by some consumers or businesses, even if they involve no deception or threat to airline competition. This is an incorrect reading of section 411, for that section does not give us unlimited authority to regulate airline practices. To adopt the more expansive interpretation of section 411 proposed by the Association would frustrate Congress' decision that the public will benefit if airline fares and services are determined by market forces rather than government regulation. …

> Furthermore, even apart from Congress' decision to deregulate the airline industry, the courts have held that section 5 [of the FTC Act] does not give the FTC unlimited authority to proscribe competitive practices that it considers unfair or undesirable.

Order 92-5-60, Dep't of Transport. Dockets 46280 & 47539 (May 29, 1992); *accord House Committee on Public Works and Transportation Report* on the *Civil Aeronautics Board Sunset Act of 1983*, H. Rep. No. 98-793 (May 21, 1984).

There is no evidence Congress intended this statute (now 49 U.S.C. 41712) to be authority for the Department to micromanage the competitive marketplace under the guise of "simplifying" transactions. Based on legislative history, the ADA rejected this kind of indirect price control. In fact, the Supreme Court held, "compelling or restricting price advertising surely 'relates to' price." *Morales v. Trans World Airlines*, 504 U.S. 374, 388-89 (1992) (quoting *Illinois Corp. Travel v. American Airlines, Inc.*, 889 F.2d 751, 754 (7th Cir. 1989)).

- 14 -

Consumer regulations like overbooking or refund policies where consumers are locked in and have no choice or options are very different from making a voluntary choice about which airline to fly and what services to purchase. Such regulations are completely unlike these elements of carrier pricing which were part of, and included in, airfares before Deregulation and left to competition by the Act.

This is consistent with the Congressional mandate in the ADA supporting a hands-off regulatory scheme to support innovative, low-cost services. *See* 49 U.S.C. § 40101 (policy factors); § 41109 (restricting the Department from "adding or changing schedules, equipment, ***accommodations***, and facilities for providing the authorized transportation *to satisfy business development and public demand*.").

**2. The Rule violates the First Amendment by restricting truthful advertising of standalone airfare tickets and compelling airlines to sell and advertise add-on products not required for air travel.**

Advertising a standalone airfare product, without optional add-on services is lawful and not "*more likely to deceive the public than to inform it.*" *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563-64 (1980) (emphasis added) (citing *Friedman v. Rogers*, 440 U.S. 1 (1979)). This is protected commercial speech under the First Amendment, which can only be restricted by regulation satisfying an intermediate scrutiny analysis. *Id.* at 564.

The Department bears the burden of establishing: (1) the government has a substantial interest in restricting how airlines advertise standalone airfares on their own websites; (2) the Rule directly advances the government interest; and (3) the Rule is narrowly tailored to achieve the interest such that "*a more limited restriction on commercial speech*" could not. "As in other contexts, these standards ensure not only that the State's interests are proportional to the resulting burdens placed on speech but *also that the law does not seek to suppress a disfavored message*." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011) (emphasis added) (citation omitted).

> a. **There is no substantial government interest in restricting the sale of lawful transportation products (*e.g.* a travel ticket that does not include Optional Services).**

The Department cannot establish a substantial interest in restricting how airlines advertise air transportation services which can lawfully be sold (*e.g.*, a travel ticket not including Optional Services); just as it cannot restrict airlines from selling standalone fares to consumers seeking them out. Such restriction on speech interferes with every statutory policy factor directing the Department to be hands-off in supporting competition—the entire purpose of the ADA.

The primary interest asserted in the Rule is the implausible assertion that "[i]t appears that consumers are generally unaware of the amount of the ancillary fees that apply to them when they book tickets." 89 Fed. Reg. at 34624. This conclusion

is undermined by nearly 50 years of innovation since Deregulation, and at least 14 years where separate pricing for optional services has been offered by all but one major U.S. airline. Other Department imposed fare disclosure rules have been in place for decades. Under these rules, industry practice has assured **full disclosure of all components of the final price before purchase** and reflect only products selected by the consumer.

        b.   **No harm results from showing consumers accurate prices for air travel which does not include Optional Services.**

Here, the Rule arbitrarily determines consumers are harmed because they are shown the price of a ticket (including government-imposed fees) without immediately seeing optional add-on services they may have no interest in and are not required to purchase to travel.

Optional Service pricing is already available through less restrictive means under existing regulations. As the Rule references, "[14 C.F.R. § 399.85(b)] requires airlines and ticket agents to disclose clearly and prominently on the first screen with a fare quotation for a specific itinerary **that additional airline fees for baggage may apply and where consumers can see these fees.**"  89 Fed. Reg. at 34622. Today, airlines do this through a link on the first page. The Rule crosses the boundary of disclosure requirements into the realm of mandating the advertisement of a product.

On Spirit and Frontier websites, anyone can immediately find the cost of optional services before and during the booking process (and always prior to purchase). After a traveler selects their flight, they have the choice to add whichever optional services fit their needs. This is a common-sense practice, and the Rule provides no substantive explanation supporting the Department's assertion otherwise.

### 3. The Rule violates the Administrative Procedure Act

#### a. The Department failed to reasonably consider its fundamental competition mandates.

"Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2262 (2024). Courts do not rely on an agency assertion that the scope of a rule is authorized under its rulemaking authority. *Id.* (citing *Michigan v. EPA*, 576 U.S. 743 (2015)).

Agency action under the APA must be ignored if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Arbitrary and capricious review focuses on whether an agency articulated a rational connection between the facts found and the decision made." *Mexican Gulf Fishing Co. v. U.S. Dep't of Commerce*, 60 F.4th 956, 971 (5th Cir. 2023) (quoting *ExxonMobil Pipeline Co. v. U.S. Dept. of Transportation*, 867 F.3d 564, 571 (5th Cir. 2017) (internal quotation marks and citation omitted)). The agency is required to

consider all "relevant factors" before making a reasoned decision. *E.g., Michigan v. EPA*, 576 U.S. 743, 743 (2015).

The Department ignored its competition mandate, the express purpose of De-regulation under the ADA, and other key factors which arose throughout the rule-making process. The Department was required to consider whether the Rule is "in the public interest and consistent with public convenience and necessity" 49 U.S.C. § 40101(a). Congress directed the Department to consider:

- "placing maximum reliance on competitive market forces and on actual and potential competition," *id.* § 40101(a)(6);

- "avoiding unreasonable industry concentration, excessive market domina-tion, monopoly powers, and other [anticompetitive] conditions," *id.* § 40101(a)(6).

- "the continued strengthening of small air carriers to ensure a more effective and competitive airline industry" *id.* § 40101(a)(13)

- "the availability of a variety of adequate, economic, efficient, and low-priced services without unreasonable discrimination or unfair or deceptive prac-tices.," *id.* § 40101(a)(4);

- "encouraging, developing, and maintaining an air transportation system rely-ing on actual and potential competition—
(A) to provide efficiency, innovation, and low prices; and
(B) to decide on the variety and quality of, and determine prices for, air trans-portation services." *Id.* § 40101(a)(12).

The Rule failed to acknowledge many of these. Indeed, while the Department uses the word "competition" 57 times in the Rule, not once does it analyze the Rule's

impact on competition beyond one-sentence, threadbare conclusion amounting to the Department simply disagreeing with the many commenters. *See, e.g.*, 89 Fed. Reg. at 34628 ("The harm that consumers experience is not outweighed by benefits to consumers or competition because consumer confusion about applicable bag fees harms, rather than benefits, competition and creates less than optimal purchasing decisions by consumers."). The Department's burden "*is **not** satisfied by an agency decision that ignores an important aspect of the problem before it or relies upon a threadbare explanation.*" *Spirit Airlines, Inc. v. Dep't of Transport.*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) (emphasis added) (holding that DOT failed to consider the impact of its decision on competition).

### b. The Department failed to reasonably analyze the Rule's disparate costs to smaller carriers and the traveling public.

"[T]o determine whether the agency considered the relevant factors, the court must [also] decide whether the agency addressed any 'significant points . . . raised by the public comments.'" *Mexican Gulf Fishing Co. v. U.S. Dep't of Commerce*, 60 F.4th 956, 971 (5th Cir. 2023) (quoting *Huawei Technologies v. FCC*, 2 F.4th 421, 449 (5th Cir. 2021).

While the Department spent many pages in the Rule regurgitating comments, its responses to them were similarly lacking meaningful substance to avoid Arbitrary and Capricious classification. When commenters raised the serious concern that the

Rule would destroy the "business model of unbundled offerings," the Department simply concluded: "The rule does not prohibit such a model, and by improving the disclosure of fees associated with ancillary services, the Department believes that the rule helps to improve the model by making it more transparent to consumers." 89 Fed. Reg. at 34634. As this Court previously held, the Department's expertise "does not extend to and include all the social policy factors which it here argues it may evaluate and consider." *Transcon. Bus Sys., Inc. v. Civil Aeronautics Bd.*, 383 F.2d 466, 484 (5th Cir. 1967).

Commenters raised concerns about the disproportionate disadvantage the Rule would bear on smaller, low-cost carriers, 89 Fed. Reg. at 34639, to which the Department responded with a similar bold and unsubstantiated statement: "Rather than placing ULCCs at a competitive disadvantage, the Department expects that this rule will promote competition by making fees for critical ancillary services more transparent for consumers." *Id.* Similar hackneyed responses were made nearly every comment submitted by Spirit, Frontier and other airlines – they were all ignored without the Department giving due weight to the relevant issues raised. These issues include, among others:

- Ignoring the cost of loss revenue, infrastructure upgrades, and other system overhauling needed to ancillary service pricing in the form the Rule requires.

- Failing to account for disruption to consumers who will lose access to low-cost fares.

- An invalid Regulatory Impact Analysis (RIA) claiming data out of thin air and was insufficient to support the Department's conclusions.

- A failure to identify the "reasonable consumers" the Department conjures in the Rule.

- The cost and business impact of requiring carriers to share real-time information with third-party sellers regarding ancillary services.

- The failure to weigh how a less-restrictive tools, like the 24-hour refund requirement, already ensures consumers know exactly what price they pay.

The Department failed to consider these factors, and the rule is arbitrary and capricious.

## B. The Low-Cost Airlines face existential, unrecoverable, and disproportionate irreparable harm, which supports granting a stay.

Irreparable harm can be established if the Rule will cause "more than de minimis" financial injury. *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 236 (5th Cir. 2024). Costs incurred to comply with an agency regulation under review "almost *always* produce[] the irreparable harm of nonrecoverable compliance costs." *Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1142 (emphasis in original). Even recoverable costs can establish irreparable harm where losses would threaten the existence of some portion of the party's business. *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016).

Failure to stay the Rule would "immediately hit [the Low-Cost Airlines] … with enormous and unrecoverable compliance costs–which would inevitably be

passed on to [travelers]." *Career Colls. & Sch. of Tex.*, 98 F.4th at 255. Spirit faces

compliance-related harms estimated at over $250 million. Frontier faces compli-

ance-related harms estimated at over $1 billion. These include direct compliance

costs as well as foregone revenue from cutting off sales channels where compliance

could not be met by the deadlines. It also includes the opportunity costs of putting

off critical customer-serving upgrades to their systems which were planned well be-

fore the Rule was issued. Ultimately, it is price-sensitive consumers who will bear

these.

## C. The public interest and the Government will not be harmed by pausing imple-mentation of an unprecedented rule.

The third and fourth factors for a stay—harm to other parties and the public

interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at

420. A temporary stay of the Rule will cause no harm to the public, as travelers

already have access to optional service prices under pre-existing Department regu-

lations.

The new requirements will confuse customers as to whether fees for ancillary

products and services are included in the largest number, which numbers corre-

spond to which fees, and whether the fees are optional. Price listings are already

crowded with information regarding the dates, times, prices, and class of each ticket,

doubly so for round-trip. The result is a huge multiplication of what airline platforms

need to do.  Ultimately, "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998) (citation omitted).

## VI.  Conclusion

The Rule is unlawful and inconsistent with the overwhelming public interest mandate of the Department to support the innovation of low-fare carriers, the diversity of services and competition they provide, and the price-sensitive category of travelers relying on their services. Accordingly, a stay should be granted.

Dated: July 26, 2024                            Respectfully submitted,

/s/ Joanne W. Young
Joanne W. Young
jyoung@yklaw.com
*Counsel of Record*
David M. Kirstein
dkirstein@yklaw.com
Donald L. Crowell III
dcrowell@yklaw.com
**Kirstein & Young PLLC**
1750 K Street NW, Suite 700
Washington, DC  20006
Phone: (202) 331-3348
Fax: (202) 331-3933

*Counsel for Spirit Airlines, Inc. and Frontier Group Holdings, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, as calculated by Microsoft Word, it contains 5,183 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f), and (2) this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Charter font.

Dated: July 26, 2024

/s/ Donald L. Crowell III
Donald L. Crowell III

*Counsel for Spirit Airlines, Inc. and Frontier Group Holdings, Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to Circuit Rule 27.4, I hereby certify that this Court's conference requirement is satisfied because on June 28, 2024, Paul M. Geier, Acting Assistant General Counsel for Litigation and Enforcement, Department of Transportation, emailed me a letter signed by Blane A. Workie, Assistant General Counsel, Office of Aviation Consumer Protection, Department of Transportation (SA9-16), denying the Spirit's stay request. On July 26, 2024, I contacted counsel for Respondent about this motion and was advised that Respondent opposes the motion.

Dated: July 26, 2024

/s/ Donald L. Crowell III
Donald L. Crowell III

*Counsel for Spirit Airlines, Inc. and
Frontier Group Holdings, Inc.*

## CERTIFICATE OF SERVICE

I certify that, on July 26, 2024, I electronically filed the foregoing Petition for Review with the United States Court of Appeals for the Fifth Circuit through the Court's CM/ECF system.

Dated: July 26, 2024

/s/ Donald L. Crowell III
Donald L. Crowell III

*Counsel for Spirit Airlines, Inc. and Frontier Group Holdings, Inc.*