## No. 24-60231

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

———————————

Airlines for America; Alaska Airlines, Incorporated; American Airlines, Incorporated; Delta Air Lines, Incorporated; Hawaiian Airlines, Incorporated; Jetblue Airways Corporation; United Airlines, Incorporated; National Air Carrier Association; International Air Transport Association,

Petitioners,

v.

Department of Transportation,

Respondent

*consolidated with*

### No. 24-60373

Spirit Airlines, Incorporated,

Petitioners,

v.

United States Department of Transportation,

Respondent.

———————————

On Petition for Review from the Department of Transportation,
89 Fed. Reg. 34,620

———————————

### RESPONDENT'S OPPOSITION
### TO EMERGENCY MOTION FOR A STAY IN NO. 24-60373

———————————

*Of Counsel:*

SUBASH IYER
  *Acting General Counsel*

PAUL M. GEIER
  *Acting Assistant General Counsel for Litigation and Enforcement*

BLANE A. WORKIE
  *Assistant General Counsel for the Office of Aviation Consumer Protection*

PAULA LEE
  *Senior Trial Attorney*

EMILY KVESELIS
  *Trial Attorney*

  *U.S. Department of Transportation*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
MARTIN TOTARO
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7525*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5048*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as respondent is a governmental party.  5th Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

The government respectfully submits that oral argument is not necessary because petitioner Spirit Airlines, Inc. and Intervenor Frontier Group Holdings, Inc. (collectively, "petitioners") in No. 24-60373 have not stated grounds for the extraordinary interim relief that they seek. The final rule under review is a straightforward exercise of the Department of Transportation's plain statutory authority, it is thoroughly and reasonably explained, and it issued after an extended comment period. The government, however, stands ready to present oral argument should the Court find it helpful.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................1

STATEMENT ...................................................................... 4

    A.    Statutory and Regulatory Background....................................... 4

    B.    Factual Background.................................................... 8

    C.    Prior Proceedings ......................................................12

ARGUMENT ........................................................................12

I.    Petitioners Are Unlikely To Succeed on the Merits............................13

    A.    The Rule Is a Valid Exercise of the Department's
          Statutory Authority....................................................13

    B.    The Rule Satisfies the First Amendment ................................. 20

    C.    The Rule Reasonably Addressed Its Effects on
          Low-Cost Carriers......................................................21

II.    The Remaining Factors Tilt Sharply Against Granting a Stay ........... 24

CONCLUSION .......................................................... 27

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                    **Page(s)**

*Clean Water Action v. EPA*,
  936 F.3d 308 (5th Cir. 2019) ....................................................................16

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
  710 F.3d 579 (5th Cir. 2013)................................................................... 25

*Department of Commerce v. New York*,
  588 U.S. 752 (2019)................................................................................. 23

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021) ................................................................................ 22

*FDA v. Alliance for Hippocratic Med.*,
  602 U.S. 367 (2024) ................................................................................ 25

*FTC v. Indiana Fed'n of Dentists*,
  476 U.S. 447 (1986)................................................................................. 23

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022) ................................................................ 24

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992)....................................................................... 6, 17, 18

*Murthy v. Missouri*,
  144 S. Ct. 1972 (2024) ............................................................................ 26

*National Soc'y of Prof'l Eng'rs v. United States*,
  435 U.S. 679 (1978) ................................................................................ 23

*Nken v. Holder*,
  556 U.S. 418 (2009) ......................................................................12, 24, 25

*R J Reynolds Tobacco Co. v. FDA*,
  96 F.4th 863 (5th Cir. 2024)...................................................................20

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
    415 U.S. 1 (1974) ................................................................ 24

*Spirit Airlines, Inc. v. U.S. Dep't of Transp.*,
    687 F.3d 403 (D.C. Cir. 2012) ...............................6, 14, 20, 21, 24

*Starbucks Corp. v. McKinney*,
    144 S. Ct. 1570 (2024) ...................................................... 26

*United Air Lines, Inc. v. C.A.B.*,
    766 F.2d 1107 (7th Cir. 1985) ............................................. 18

**Statutes:**

Airline Deregulation Act of 1978,
    Pub. L. No. 95-504, 92 Stat. 1705 ..........................................17

Civil Aeronautics Act of 1938,
    ch. 601, tit. IV, §411, 52 Stat. 973, 1003..................................... 5

FAA Extension, Safety, and Security Act of 2016,
    Pub. L. No. 114-190, tit. II, subtitle C, §2308, 130 Stat. 615, 648 .............19

15 U.S.C. §45(a)(2) ........................................................... 6

49 U.S.C. §40101(a)(4)....................................................5, 13, 25

49 U.S.C. §40101(a)(9)....................................................5, 13, 25

49 U.S.C. §40101(a)(12) ............................................... 5, 13, 18, 25

49 U.S.C. §40113(a)................................................... 3, 5, 13, 15

49 U.S.C. §41712................................................................ 5, 6

49 U.S.C. §41712(a) ....................................................3, 4, 5, 13

49 U.S.C. §41713................................................................. 6

49 U.S.C. §46106................................................................5, 13

49 U.S.C. §46107(b)(1)(A)..................................................................5, 13

49 U.S.C. §46110(c) ...............................................................................26

49 U.S.C. §46301(a) ...............................................................................15

49 U.S.C. §46301(a)(5)(D) ..................................................................5, 13

## Regulation:

14 C.F.R. §399.84(a) .................................................................................7

## Legislative Materials:

H.R. 3935, 118th Cong. tit. V, subtitle A (2024)
   §513(a).......................................................................................18-19
   §513(b)(3)........................................................................................19

H.R. Rep. No. 98-793 (1984) ...................................................................18

## Other Authorities:

47 Fed. Reg. 52,980 (Nov. 24, 1982).........................................................6

49 Fed. Reg. 40,567 (Oct. 17, 1984) .........................................................6

49 Fed. Reg. 49,438 (Dec. 20, 1984).........................................................6

49 Fed. Reg. 49,440 (Dec. 20, 1984).........................................................7

64 Fed. Reg. 12,854 (Mar. 15, 1999).........................................................6

73 Fed. Reg. 21,026 (Apr. 18, 2008) .........................................................6

74 Fed. Reg. 68,983 (Dec. 30, 2009) .........................................................6

76 Fed. Reg. 23,110 (Apr. 25, 2011).........................................................7

87 Fed. Reg. 63,718 (Oct. 20, 2022)..........................................................7

## INTRODUCTION

For decades, the Department of Transportation has prescribed regulations protecting consumers from unfair and deceptive practices in the airline industry. Under its statutory authority to address such practices, the Department has required airlines to disclose the entire price of airfare, to provide appropriate compensation to affected customers on overbooked flights, and to create and publish contingency plans ensuring that passengers do not suffer hours-long tarmac delays without access to food, water, restrooms, and medical care.

This case concerns a final rule protecting consumers from surprise costs known as "ancillary fees," which cause customers to overpay by hundreds of millions of dollars every year. 89 Fed. Reg. 34,620 (Apr. 30, 2024). The Rule does not restrict the amount or nature of fees. Rather, it requires their upfront disclosure: Airlines must disclose baggage, change, and cancellation fees accurately—and do so the first time the carrier quotes a fare in response to a customer's online itinerary search. The Rule also requires carriers to reveal their size-and-weight limits for carry-on, first-checked, and second-checked baggage before ticket purchase, and, if the airline sells advance-seat assignments, to disclose that the additional purchase is unnecessary to confirm a seat on the flight. Additionally, when a

consumer inputs account information specific to the passenger, like frequent-flyer or military status, the carrier must disclose the fees applicable to that individual.  The Rule explains that carriers and ticket agents commit an unfair or deceptive practice when they fail to provide fee information upfront and estimates the new disclosures will provide net benefits worth $30.3 million to $253.5 million annually.

The Department promulgated the Rule following years of consumer complaints and analysis, an extended comment period, and a public hearing.  The Rule also provides a long compliance deadline.  Airlines need not provide relevant data to third-party ticket agents until October 30, 2024, nor launch any public-facing changes until April 30, 2025.

Moreover, after the Department had promulgated the Rule, Congress enacted the FAA Reauthorization Act of 2024: The Act addresses certain offline ticket disclosures covered by the Rule, without questioning any other aspect of it or the Department's regulatory authority.

Spirit Airlines, Inc.'s and Frontier Group Holdings, Inc.'s stay request seeking to upset those efforts should be denied.  Several petitioners have already sought review of the Rule in this Court, including the National Air Carrier Association, *see Airlines for Am. v. Department of Transportation* (5th Cir. No. 24-60231), and the Court recently consolidated both cases.

2

Spirit and Frontier are members of the National Air Carrier Association and filed a joint declaration in that case. *See* Special Appendix at SA112-SA123, *Airlines for Am.*, No. 24-60231 (June 14, 2024), Dkt. No. 37. Spirit and Frontier cannot explain why they are entitled to extraordinary equitable relief in this case when they are simultaneously challenging the Rule in another matter.

A panel in the *Airlines for America* litigation recently granted a stay of the Rule based on its conclusion that the Rule "likely exceeds" the Department's authority. July 29, 2024 Order 2 (No. 24-60231). But the order accepts the incorrect interpretation of 49 U.S.C. § 41712(a) offered by petitioners in that case. Congress provided the Department with authority to "investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation." *Id.* Congress also gave the Secretary "General Authority" to "conduct[ ] investigations, *prescrib[e] regulations*, standards, and procedures, and issu[e] orders" to *"carr[y] out"* the "Air Commerce and Safety" provisions in 49 U.S.C. Part A, including Section 41712(a). *Id.* § 40113(a) (emphasis added). The Rule is rooted in that well-established and judicially recognized authority and comports with the Administrative Procedure Act.

3

Petitioners' arguments in their motion, moreover, were passed over by petitioners in *Airlines for America*, who chose not to make what they recently described as "tertiary" arguments. *See* Petitioners' Letter at 3, *Airlines for Am.*, No. 24-60231 (July 29, 2024), Dkt. No. 60. And on the remaining stay factors, petitioners allege conclusory injury, disregard harms that their veiled fees cause, and overlook the Rule's significant benefits to the public.

## STATEMENT

### A.    Statutory and Regulatory Background

Congress delegated broad authority to the Department of Transportation Secretary to protect consumers from unfair or deceptive practices in airline transportation. 49 U.S.C. § 41712(a). The relevant provision is broken up into two parts. *First*, the Secretary has authority to "*investigate and decide* whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation." *Id.* (the investigate-and-decide provision) (emphasis added). *Second*, "[i]f the Secretary, after notice and an opportunity for a hearing, finds that an air carrier, foreign air carrier, or ticket agent is engaged in an unfair or deceptive practice or unfair method of competition, the Secretary shall order the air carrier,

foreign air carrier, or ticket agent to stop the practice or method." *Id.* (the stop provision). Comparable authority was included in the Civil Aeronautics Act of 1938, and has remained virtually unchanged ever since, despite significant changes to other aspects of federal regulation of air transportation. *See* Civil Aeronautics Act of 1938, ch. 601, tit. IV, § 411, 52 Stat. 973, 1003 (enacting precursor to 49 U.S.C. § 41712).

Congress also provided the Secretary with "General Authority" to "conduct[] investigations, prescrib[e] regulations, standards, and procedures, and issu[e] orders" to "carry out" the "Air Commerce and Safety" provisions in 49 U.S.C. Part A, including Section 41712(a). 49 U.S.C. § 40113(a). That Part encompasses both prongs of Section 41712's protections against "unfair or deceptive practices"—the investigation-and-decide provision and the stop provision.

In "carrying out" those authorities, the Secretary "shall consider" it "in the public interest" to "prevent[] unfair, deceptive, predatory, or anticompetitive practices in air transportation." 49 U.S.C. § 40101(a)(9); *see id.* § 40101(a)(4), (12). Further, Congress established civil penalties for a "violation of section 41712 (*including a regulation prescribed . . . under such section*)." *Id.* § 46301(a)(5)(D) (emphasis added); *see id.* §§ 46106, 46107(b)(1)(A). There are no other meaningful consumer-protection

5

measures applicable to air travel, as state regulation is expressly preempted, the Federal Trade Commission's general authority to prevent unfair or deceptive practices does not apply to air carriers, and no private right of action exists to enforce 49 U.S.C. § 41712. *See id.* § 41713; *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) (state regulation); 15 U.S.C. § 45(a)(2) (FTC authority).

For decades, the Department has invoked Section 41712 to prescribe generally applicable regulations to prevent unfair and deceptive practices. *See Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 687 F.3d 403, 408-09 (D.C. Cir. 2012) (recounting history).  For example, under Section 41712, carriers must disclose the entire price of airfare, *e.g.*, 49 Fed. Reg. 49,438 (Dec. 20, 1984); provide appropriate compensation to affected travelers on overbooked flights, *e.g.*, 47 Fed. Reg. 52,980 (Nov. 24, 1982); 73 Fed. Reg. 21,026 (Apr. 18, 2008); disclose scheduled plane-changes when selling tickets under a single flight number, 64 Fed. Reg. 12,854 (Mar. 15, 1999); and create and publish contingency plans ensuring that passengers have access to basic necessities during hours-long tarmac delays, 49 Fed. Reg. 40,567 (Oct. 17, 1984); 74 Fed. Reg. 68,983 (Dec. 30, 2009).

Especially relevant here, 40 years ago, the Department promulgated a rule requiring that any advertised price for air transportation disclose the

"entire price to be paid by the customer to the air carrier." 49 Fed. Reg. 49,440, 49,440 (Dec. 20, 1984) (codified as amended at 14 C.F.R. §399.84(a)). And in 2011, the Department promulgated a regulation requiring airlines to disclose specific baggage fees and other ancillary fee information as a range on their websites, to disclose (on the first screen of an airfare quote) that additional fees may apply, and to state where those prices can be found. 76 Fed. Reg. 23,110 (Apr. 25, 2011).

Despite those exercises of regulatory authority, the Department has continued to receive complaints and reports—from commenters, consumers, consumer advocacy groups, States' attorneys general, and the Government Accountability Office—that airlines still obfuscate the true price of airfare. 89 Fed. Reg. at 34,622-24; 87 Fed. Reg. 63,718, 63,719-21 (Oct. 20, 2022) (notice of proposed rulemaking). For example, many airlines still list baggage fees in complex charts and provide wide ranges for their change-or-cancellation fees, frustrating customer efforts to determine fees that would apply. 89 Fed. Reg. at 34,627-29. The Department estimates that surprised consumers overpay—by over half a billion dollars a year—ancillary fees. *Id.* at 34,622.

### B.    Factual Background

The regulation at issue here is the Department of Transportation's April 2024 Rule titled "Enhancing Transparency of Airline Ancillary Service Fees." It provides protections for airfare consumers against unfair or deceptive practices.

The Rule is different in degree rather than kind when compared to past fee-disclosure efforts discussed above. In the Rule, the Department concluded that airlines' failure to disclose certain baggage, change, and cancellation fees upfront, clearly, and accurately, is unfair and deceptive. 89 Fed. Reg. 34,624-32. The Rule requires airlines to disclose fees for carry-on, first-checked, and second-checked baggage, and the fees to change or cancel a ticket, when the airline first provides fare and schedule information in response to an online itinerary search. *Id.* at 34,627-29. Additionally, the Rule requires carriers to disclose their corresponding bag dimensions and change-or-cancellation policies before ticket purchase, *id.*, and to disclose that a consumer need not pay an advanced-seat-selection fee to guarantee a seat on the plane, *id.* at 34,645. When a consumer provides "account information specific to the passenger," like their frequent-flyer or military status, the carrier must disclose the fees applicable to that

individual.  *Id.* at 34,621.  The Rule also addresses practices by third-party ticket agents and establishes similar requirements.  *See, e.g.*, *id.*

The Department promulgated the Rule after years of study, an extended comment that included over 800 comments, and a public hearing. *See* 89 Fed. Reg. at 34,625-27.  The Rule's preamble explains in detail the Department's rationales for the Rule's provisions.  For instance, the Rule "improves the transparency of airline pricing through the increased disclosure of fees for critical ancillary services during the itinerary search process."  *Id.* at 34,634.  Absent the Rule, consumers may continue to "have difficulty understanding the actual and potential costs of accessing the air transportation between different carriers."  *Id.*  As one example, "consumers continue to report confusion regarding the total cost of baggage fees in connection with complex itineraries, interline tickets, and codeshare flights."  *Id.* at 34,640.  The Rule's efforts to increase transparency will minimize customer confusion by "allow[ing] for better understanding of airline ticket pricing, of which these fees are often a critical component." *Id.* at 34,634.

The Rule's preamble and Regulatory Impact Analysis (https://perma.cc/TUA6-XL7F) (RIA) include an extensive discussion of the Rule's potential benefits and costs.  The preamble explains that the

"[e]xpected benefits of the rule result from the reduction of excess consumption of air travel, or deadweight loss, which occurs because consumers who are unaware of ancillary service fees behave as if the price for air travel is lower than it is," while "[t]he primary estimated costs of the rule to carriers and ticket agents are the costs that they would incur to modify their websites by adjusting their displays of fares, schedules, and fees." 89 Fed. Reg. at 34,622. When considering claimed costs and various economic variables, the Department estimates that the Rule will yield net annual benefits between $30.3 million to $253.5 million. *Id.* at 34,668-69.

The Regulatory Impact Analysis explains the economic concept of "drip pricing," where firms advertise only part of a product's price and disclose other charges later as the customer goes through the buying process. RIA 2-3. With drip pricing, even where customers learn of additional fees, they may be "reluctant to restart the purchase process because they perceived high search costs and inaccurately assumed that all companies charge the same fees." RIA 3.

The Regulatory Impact Analysis describes in extensive detail the Department's economic analysis. *E.g.*, RIA 6-12 (baseline analysis); RIA 12-18 (discussion of the Rule's benefits); RIA 18-21 (discussion of the Rule's costs); RIA 21-23 (estimate of fees consumers would avoid with accurate

information); RIA 24 (benefit-cost comparison); RIA 25-27 (explanation of uncertain parameters that informed analysis); RIA 27-29 (discussion of regulatory alternatives considered by the Department). It acknowledges that the range of net benefits "is indicative of significant uncertainty in key parameters," with "the most significant driver of the results" being the "number of consumers who consider ancillary fee information relevant to their purchase of airline tickets." RIA i. It also notes that, with better information to calculate the total price of air travel upfront, compare those prices across airlines, and avoid surprise fees at the end of the booking process, some consumers "will pay less for the ancillary services they use." RIA i-ii.

The Rule was scheduled to take effect July 1, 2024, with staggered compliance deadlines. Airlines were required to provide relevant fee data to third-party ticket agents by October 30, 2024 but would not have needed to comply with the Rule's remaining requirements until April 30, 2025. 89 Fed. Reg. at 34,667. On July 29, 2024, a panel in the *Airlines for America* case, however, granted the request by petitioners in that case for a stay of the rule pending review.

### C.    Prior Proceedings

Spirit filed a petition for review in the Eleventh Circuit on June 28, 2024, No. 24-12121, that was subsequently transferred to this Court.  On July 29, 2024, this Court issued an order that carries with the case Spirit's motion for an administrative stay and stay pending appeal, and granted Frontier's motion to intervene.

### ARGUMENT

The Court should deny petitioners' motion.  "'A stay is not a matter of right'" but "'an exercise of judicial discretion.'"  *Nken v. Holder*, 556 U.S. 418, 433 (2009).  The movant "bears the burden of showing that the circumstances justify an exercise of that discretion" under four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"  *Id.* at 433-34.  The "first two factors" are "most critical," *id.* at 434, yet all weigh strongly against petitioners.

## I.    Petitioners Are Unlikely To Succeed on the Merits

### A.    The Rule Is a Valid Exercise of the Department's Statutory Authority

The Rule is a straightforward exercise of the Department's authority to regulate unfair and deceptive practices, supported by statutory text, decades of history, and longstanding judicial precedent.

**1.**    The Department has authority to prescribe regulations to "investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation." 49 U.S.C. § 41712(a) (the investigate-and-decide provision). It has additional authority to order carriers and ticket agents to "stop" unfair or deceptive practices or methods. *Id.* (the stop provision).

Congress further provided the Secretary with "General Authority" to "prescrib[e] regulations" to "carry out" the "Air Commerce and Safety" provisions in 49 U.S.C. Part A, including Section 41712(a). 49 U.S.C. § 40113(a). That Part encompasses both prongs of Section 41712's protections against "unfair or deceptive practices"—including the investigation-and-decide provision. In "carrying out" those authorities, the Secretary "shall consider" it "in the public interest" to "prevent[] unfair, deceptive, predatory, or anti-competitive practices in air transportation." *Id.*

13

§ 40101(a)(9); *see id.* § 40101(a)(4), (12).   And Congress established civil penalties for a "violation of section 41712 (*including a regulation prescribed . . . under such section*)."   *Id.* § 46301(a)(5)(D) (emphasis added); *see id.* §§ 46106, 46107(b)(1)(A).

The Rule comfortably falls within that statutory framework.   Congress authorized the Department to prescribe affirmative regulations stating that certain practices are unfair or deceptive under Section 41712(a)'s investigate-and-decide provision, confirmed that authority through Section 40113(a)'s grant of authority to "prescrib[e] regulations" to "carry out" Section 41712(a), and gave the Department the ability to enforce violations by using procedures set forth in these other provisions.

History underscores the Department's authority to promulgate the Rule.   Under Section 41712, the Department has consistently promulgated regulations targeting unfair and deceptive airline practices—including rules requiring that any advertised price for air transportation disclose the entire price of the fare.   *See* pp. 6-7, *supra.*   And in *Spirit Airlines, Inc. v. United States Department of Transportation*, 687 F.3d 403 (D.C. Cir. 2012), the D.C. Circuit upheld the 2011 rule mentioned above requiring airlines to make the "total price" of airfare "the most prominent figure displayed on [the airline's] print advertisements and websites," to permit customers to

14

cancel their reservations within "twenty-four hours following purchase," and to refrain from "increasing the price of air transportation and baggage fees after consumers purchase their tickets." *Id*. at 408. The court upheld that prescriptive rule as a proper "exercise of [the agency's] statutory authority to prevent 'unfair or deceptive practices,'" *id*. at 411 (alteration omitted), "plainly allowed under 49 U.S.C. § 41712," *id*. at 416, and consistent with the Administrative Procedure Act, *id*. at 417.

**2.** A panel in the *Airlines for America* case concluded that the investigate-and-decide provision only authorizes the Department to "adjudicate whether certain practices are 'unfair or deceptive.'" July 29 Order 3. That view, however, discounts the Department's authority to determine what to "investigate" and "decide" as an unfair or deceptive practice. And it does not give due weight to Congress's decision to grant the Department authority in Section 40113(a) to "carry out" the provisions in Section 41712(a) by prescribing regulations. 49 U.S.C. § 40113(a). The panel interpreted Section 40113(a) as a "catch-all authority" that, under the Department's view, "would obliterate the directly applicable textual limits spelled out in §41712(a)." July 29 Order 5. But the Department's interpretation of Section 40113(a) supports rather than expands the textual limits in Section 41712(a)'s investigate-and-decide provision by confirming that the

15

Department has authority *to define* what the Department may investigate and decide.  And if the Department concludes that a practice is unfair or deceptive, Section 41712(a)'s "stop" provision grants the Department the authority to order an airline to cease its unlawful practice, and a different provision allows the Department to impose civil penalties, *see* 49 U.S.C. §46301(a).

The Department recognizes that "agencies, as mere creatures of statute, must point to explicit Congressional authority justifying their decisions." *Clean Water Action v. EPA*, 936 F.3d 308, 313 n.10 (5th Cir. 2019). But Congress authorized the Rule through Section 41712(a)'s investigate-and-decide provision, as well as its express delegation to the Department in Section 40113(a) to "carry out" the provisions in Section 41712(a) by prescribing regulations.

The panel, moreover, did not dispute that the Department has historically exercised authority to issue prescriptive rules that define what is unfair or deceptive.  July 29 Order 6.  Petitioners agreed with that view during these proceedings.  For example, at the rulemaking stage, Airlines for America "support[ed] consumer protection regulation that advances the DOT's central obligation under airline deregulation to place maximum reliance on competitive market forces," and advocated for regulations "that

empower consumers to make intelligent choices in a competitive market-place." A4A Comment 3 (Jan. 23, 2023). And it argued that the "current market is working." *Id.* at 16. Under the panel's view, however, the Department exceeded its authority when promulgating prescriptive rules supporting consumer protection.

**3.**     Petitioners claim that the Department lacks authority to promulgate the Rule, but nowhere in their motion do they quote the relevant provisions discussed above. Mot. 10-22. They acknowledge (Mot. 11) that Section 41712 through the stop provision authorizes the Department to prevent unfair and deceptive practices after notice and hearing. But they disregard the Department's authority under the investigate-and-decide and carry-out provisions. Nor do they grapple with the Department's historical exercise of comparable authority.

Petitioners instead urge (Mot. 10-15) that Congress previously granted the Department the ability to regulate pricing information for ancillary services but has since implicitly revoked that authority. According to petitioners, the Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705 (ADA), in some combination with the Civil Aeronautics Board Sunset Act of 1984, limit the Department's authority here because those statutes sought to promote deregulation. But carriers' choices of rates are

17

currently free from regulation; their unfair and deceptive practices are not. Indeed, the ADA "retained" preexisting "enforcement authority regarding deceptive trade practices." *Morales*, 504 U.S. at 379.  And when Congress eliminated the Civil Aeronautics Board, it concluded that "there should continue to be authority in the Federal government to protect consumers against unfair and deceptive practices."  H.R. Rep. No. 98-793, at 4 (1984). Congress "was very concerned to preserve (in the Department of Transportation) authority to enforce [Section 41712]," *United Air Lines, Inc. v. C.A.B.*, 766 F.2d 1107, 1112 (7th Cir. 1985), including its authority to regulate pursuant to the investigate-and-decide provision.

Those statutes did not silently eliminate the Department's authority to promulgate disclosure rules based on claims about "the purpose of deregulation" without changing the operative provisions of Section 41712. Mot. 12.  To the contrary, Congress directed the Secretary to "encourag[e], develop[], and maintain[] an air transportation system relying on actual and potential competition."  49 U.S.C. § 40101(a)(12).  Accurate and transparent pricing information "'performs an indispensable role in the allocation of resources'" and is essential to competition.  *Morales*, 504 U.S. at 388.

Further, Congress has never contested the agency's authority to pre-
scribe practices under Section 41712 despite decades of rulemaking to the
contrary, but has enacted statutes irreconcilable with petitioners' view.
Those actions go beyond ratification and acquiescence.  In the FAA Reau-
thorization Act of 2024, Congress addressed the Rule's provisions regarding
offline ticket disclosures.  H.R. 3935, 118th Cong. tit. V, subtitle A, §513(a)
(2024) ("[T]he Secretary shall take such action as may be necessary to up-
date the process by which an air carrier or ticket agent is required to fulfill
disclosure obligations in ticketing transactions for air transportation not
completed through a website."); *id.* §513(b)(3) (endorsing regulations
promulgated under Section 41712).  That Act does not question any other
aspect of the Rule or the Department's authority to issue it.  And that broad
view of the Department's regulatory authority is reflected in other statutes
as well.  *E.g.*, FAA Extension, Safety, and Security Act of 2016, Pub. L. No.
114-190, tit. II, subtitle C, §2308, 130 Stat. 615, 648 (directing Department
to update tarmac-delay regulation promulgated under Section 41712).  If
Congress did not believe it had previously granted the Department author-
ity to promulgate rules that prescribe airline practices, those statutes would
make little sense.  To accept petitioners' view, as well as the *Airlines for
America* panel's view, July 29 Order 6 n.6, this Court would have to

19

interpret these statutes as providing isolated delegations to the Department even though Congress is aware of, and sanctioned, the Department's regulatory authority under Section 41712 that it has exercised for decades.

Contrary to petitioners' contention, the Rule is not a form of "indirect price control." Mot. 14. It is part of a longstanding effort to protect consumers from unfair and deceptive practices—here, surprise costs known as "ancillary fees"—by requiring upfront disclosure.

### B.    The Rule Satisfies the First Amendment

Petitioners do not advance their argument by seeking to give it a constitutional dimension. Mot. 15-18. As the D.C. Circuit squarely held in *Spirit*, 687 F.3d 403, disclosure rules promulgated by the Department targeting hidden fees do not violate the First Amendment. *See id.* at 411-15. As the D.C. Circuit explained, "purely factual" disclosures need only be "reasonably related" to the government's interest in preventing consumer deception to withstand First Amendment scrutiny. *Id.* at 411. The Rule's "purely factual and uncontroversial commercial speech," *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 877 (5th Cir. 2024), "aims to prevent consumer confusion about the total price they have to pay, and it goes without saying that requiring the total price to be the most prominent number is reasonably related to that interest," *Spirit*, 687 F.3d at 414-15.

Petitioners contend that intermediate scrutiny applies, suggesting that the Rule "compel[s] airlines to sell" products, "restrict[s] the sale of lawful transportation products," and "mandat[es] the advertisement of a product." Mot. 15-17. But the Rule "just requires [airlines] to disclose" ancillary fees upfront. *Spirit*, 687 F.3d at 414. And even if intermediate scrutiny applied, the Rule would readily satisfy that standard. The governmental interest of "ensuring the accuracy of commercial information in the marketplace" is "clearly and directly advanced by a regulation requiring" upfront disclosure. *Id*. at 415.

## C. The Rule Reasonably Addressed Its Effects on Low-Cost Carriers

Petitioners claim that the Rule does not adequately consider the concerns of some low-cost carriers, but the Department's rationale is reasonable and reasonably explained. Petitioners concede that the Rule references "'competition' 57 times," but state that "[t]he Department ignored its competition mandate" set forth in Section 40101(a). Mot. 19. The Rule, however, notes that "the Department is required to consider the factors identified in 49 U.S.C. 40101 as being in the public interest and consistent with public convenience and necessity," and then explains why the Rule meets those factors. 89 Fed. Reg. at 34,633. For example, although "[u]ltra low-cost carriers . . . believed that the rule would undermine their business

21

model of unbundling ancillary services from the cost of airfare," the Department determined that the Rule "serves the public interest" in myriad ways, "does not undermine the business model of unbundled offerings," and would instead "improve the model by making it more transparent to consumers." *Id.* at 34,633-34; *see also, e.g.*, *id.* at 34,639 ("Given the benefits of the 'unbundled' [ultra low-cost carrier] model that Frontier and others touted in their comments, improved transparency should not cause [ultra low-cost carriers] to fundamentally alter such a business model (i.e., changing from an unbundled model to a bundled model)."). As Southwest Airlines—a member of Airlines for America that declined to join the pending litigation challenging the Rule in No. 24-60231—explained, "the number and complexity of fees by airlines made comparison shopping more difficult" and agreed "that it was appropriate for the Department to reduce the complexity of disclosures." *Id.* at 34,633. Petitioners may disagree as a policy matter with how the Department weighed the Rule's pro-transparency effects on competition, but that disagreement provides no basis for relief.

Petitioners stand on no firmer ground by labeling the Rule's discussion of competition as "hackneyed." Mot. 21. The Department "reasonably considered the relevant issues and reasonably explained [its] decision,"

*FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), when it made a predictive judgment that accurate and transparent pricing information would facilitate competition by allowing customers to easily compare different prices across airlines. That judgment comports with the basic principle that restricting the flow of price and fee information harms competition and consumers: It "disrupt[s] the proper functioning of the price-setting mechanism of the market," *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 461-62 (1986), and impairs consumers' "'ability to utilize and compare prices,'" *National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692-93 (1978).

Petitioners also err in contending (Mot. 20-22) that the Department ignored various costs to consumers and the public. As discussed above, the Regulatory Impact Analysis provides a detailed assessment of the Rule's benefits and costs, acknowledges some of the uncertain parameters that informed the Department's analysis, and discusses regulatory alternatives considered. *See* pp. 9-11, *supra*; *Department of Commerce v. New York*, 588 U.S. 752, 777 (2019) (explaining that courts do not "second-guess[]" an agency's "weighing of risks and benefits" associated with rulemaking). For example, the Department used "industry estimates" to measure "one-time and ongoing implementation costs associated with [carriers] updating their

current displays of fees and fares as well ongoing costs to distribute ancil-

lary fee information to ticket agents." RIA 19-21. That data was not taken

"out of thin air." Mot. 22. Nor did the Regulatory Impact Assessment ig-

nore low-cost airlines in the analysis. *E.g.*, RIA 8-9. Further, although pe-

titioners take issue with how the Department views consumer behavior,

Mot. 22, the Department issued the Rule based "on common sense and over

[four] decades of experience and complaints" about hidden fees. *Spirit*,

687 F.3d at 413; *see* 89 Fed. Reg. at 34,624-25. And a "24-hour refund re-

quirement" does not provide the same prophylactic benefits as this Rule.

Mot. 22.

## II.   The Remaining Factors Tilt Sharply Against Granting a Stay

Petitioners' stay request should also be denied because they have not

shown irreparable harm or that the equities favor a stay.

Petitioners' alleged compliance costs do not justify a stay, which is

never "'a matter of right, even if irreparable injury might otherwise result.'"

*Nken*, 556 U.S. at 433. As an equitable matter, petitioners are litigating

their claims in this case while simultaneously participating in the related

*Airlines for America* case through their trade group and by submitting a

joint declaration in that matter. Further, the Supreme Court has indicated

that ordinary "litigation expense," even if "unrecoupable," "does not

24

constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974). Petitioners offer no reason why a different rule should apply for compliance costs. And petitioners state that "consumers" will bear the costs. Mot. 23. To establish irreparable harm, "speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). Petitioners' motion includes references to harms ranging from $250 million to $1 billion, Mot. 23, but those figures are unsubstantiated. Petitioners' declarations do not support those calculations in any meaningful way. *See* SA19-SA51. For example, petitioners do not suggest that they have filed any disclosures to the Securities and Exchange Commission presenting these claimed harms.

By contrast, the harms to the government and public interest, which "merge," *Nken*, 556 U.S. at 435, weigh strongly against a stay. Petitioners invoke financial costs, but by that logic, the public will suffer irreparable injury if airlines' practices continue after the Rule's compliance deadline—particularly given the Rule's benefits. Congress also deemed it "in the public interest" to prevent unfair or deceptive practices in air transportation. 49 U.S.C. §40101(a)(4), (9), (12).

Even if petitioners were entitled to relief, a stay of the entire rule would be improper. Not all airlines have attempted to show harm, and petitioners do not have standing to seek remedies for nonparties. *See FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 385-96 (2024). Notwithstanding this Court's contrary reasoning, the power to grant relief under the Administrative Procedure Act or 49 U.S.C. § 46110(c) does not alter these constitutional and equitable constraints. *See Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (observing "strong presumption" that "traditional principles of equity" govern); *Murthy v. Missouri*, 144 S. Ct. 1972, 1985 (2024). At a minimum, petitioners cannot obtain a stay of portions of the Rule they have not challenged or for which they have not shown likelihood of success on the merits. *Id.*

## CONCLUSION

The Court should deny a stay.

Respectfully submitted,

*Of Counsel:*

SUBASH IYER
  *Acting General Counsel*

PAUL M. GEIER
  *Acting Assistant General Counsel for Litigation and Enforcement*

BLANE A. WORKIE
  *Assistant General Counsel for the Office of Aviation Consumer Protection*

PAULA LEE
  *Senior Trial Attorney*

EMILY KVESELIS
  *Trial Attorney*

  *U.S. Department of Transportation*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB

  *s/ Martin Totaro*
MARTIN TOTARO
  *Attorneys, Appellate Staff Civil Division, Room 7525 U.S. Department of Justice 950 Pennsylvania Avenue NW Washington, DC 20530 (202) 514-5048 martin.v.totaro@usdoj.gov*

August 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2024, I electronically filed this response with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.


*s/ Martin Totaro*
Martin Totaro

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,178 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Martin Totaro*
Martin Totaro

**ADDENDUM**

# TABLE OF CONTENTS

49 U.S.C. § 40101 ................................................................. A1

49 U.S.C. § 40113 ................................................................. A2

49 U.S.C. § 41712 ................................................................. A2

49 U.S.C. § 46106 ................................................................. A3

49 U.S.C. § 46107 ................................................................. A3

49 U.S.C. § 46110 ................................................................. A4

49 U.S.C. § 46301 ................................................................. A5

FAA Reauthorization Act of 2024 ................................................. A6

**49 U.S.C. § 40101**

**§ 40101. Policy**

(a) Economic Regulation.—In carrying out subpart II of this part [*i.e.*, 49 U.S.C. §§ 41101–42304] and those provisions of subpart IV applicable in carrying out subpart II, the Secretary of Transportation shall consider the following matters, among others, as being in the public interest and consistent with public convenience and necessity:

...

(4) the availability of a variety of adequate, economic, efficient, and low-priced services without unreasonable discrimination or unfair or deceptive practices.

...

(9) preventing unfair, deceptive, predatory, or anticompetitive practices in air transportation.

(10) avoiding unreasonable industry concentration, excessive market domination, monopoly powers, and other conditions that would tend to allow at least one air carrier or foreign air carrier unreasonably to increase prices, reduce services, or exclude competition in air transportation.

...

(12) encouraging, developing, and maintaining an air transportation system relying on actual and potential competition—

(A) to provide efficiency, innovation, and low prices; and

(B) to decide on the variety and quality of, and determine prices for, air transportation services.

...

A1

**49 U.S.C. § 40113**

**§ 40113. Administrative**

(a) General Authority.—

The Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by that Administrator or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by that Administrator) may take action the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, as appropriate, considers necessary to carry out this part [*i.e.*, 49 U.S.C. §§ 40101–46507], including conducting investigations, prescribing regulations, standards, and procedures, and issuing orders.

**49 U.S.C. § 41712**

**§ 41712. Unfair and deceptive practices and unfair methods of competition**

On the initiative of the Secretary of Transportation or the complaint of an air carrier, foreign air carrier, air ambulance consumer (as defined by the Secretary of Transportation), or ticket agent, and if the Secretary considers it is in the public interest, the Secretary may investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation. If the Secretary, after notice and an opportunity for a hearing, finds that an air carrier, foreign air carrier, or ticket agent is engaged in an unfair or deceptive practice or unfair method of competition, the Secretary shall order the air carrier, foreign air carrier, or ticket agent to stop the practice or method.

## 49 U.S.C. § 46106

### § 46106. Enforcement by the Department of Transportation

The Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) may bring a civil action against a person in a district court of the United States to enforce this part [*i.e.*, 49 U.S.C. §§ 40101–46507] or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part. The action may be brought in the judicial district in which the person does business or the violation occurred.

## 49 U.S.C. § 46107

### § 46107. Enforcement by the Attorney General

...

(b) Civil Actions To Enforce This Part [*i.e.*, 49 U.S.C. §§ 40101–46507].—

(1) On request of the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration), the Attorney General may bring a civil action in an appropriate court—

(A) to enforce this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part; and

(B) to prosecute a person violating this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part.

...

A3

(c) Participation of Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration.—

On request of the Attorney General, the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, as appropriate, may participate in a civil action under this part.

## 49 U.S.C. § 46110

### § 46110. Judicial review

(a) Filing and Venue.—

Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (s) [1] of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

...

(c) Authority of Court.—

When the petition is sent to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration to conduct further proceedings. After reasonable notice to the Secretary, Administrator of the Transportation

Security Administration, or Administrator of the Federal Aviation Admin-
istration, the court may grant interim relief by staying the order or taking
other appropriate action when good cause for its action exists. Findings of
fact by the Secretary, Administrator of the Transportation Security Admin-
istration, or Administrator of the Federal Aviation Administration, if sup-
ported by substantial evidence, are conclusive.

...

## 49 U.S.C. § 46301

### § 46301. Civil penalties

(a) General Penalty.—

(1) A person is liable to the United States Government for a civil pen-
alty of not more than $25,000 (or $1,100 if the person is an individual
or small business concern) for violating—

(A) ... chapter 417 (except sections 41703, 41704, 41710, 41713,
and 41714) ... of this title; [or]

(B) a regulation prescribed or order issued under any provision
to which clause (A) of this paragraph applies;

...

(5) Penalties applicable to individuals and small business con-
cerns.—

...

(D) Notwithstanding paragraph (1), the maximum civil penalty
for a violation of section 41712 (including a regulation prescribed or
order issued under such section) or any other regulation prescribed
by the Secretary of Transportation by an individual or small business
concern that is intended to afford consumer protection to commer-
cial air transportation passengers shall be $2,500 for each violation.

**FAA Reauthorization Act of 2024, H.R. 3935, 118th Cong.**

**§ 513. Streamlining of offline ticket disclosures.**

(a) In General.—

Not later than 18 months after the date of enactment of this Act, the Secretary shall take such action as may be necessary to update the process by which an air carrier or ticket agent is required to fulfill disclosure obligations in ticketing transactions for air transportation not completed through a website.

(b) Requirements.—

The process updated under subsection (a) shall—

(1) include means of referral to the applicable air carrier website with respect to disclosures related to air carrier optional fees and policies;

(2) include a means of referral to the website of the Department of Transportation with respect to any other required disclosures to air transportation passengers;

(3) make no changes to air carrier or ticket agent obligations with respect to—

(A) section 41712(c) of title 49, United States Code; or

(B) subsections (a) and (b) of section 399.84 of title 14, Code of Federal Regulations (or any successor regulations); and

(4) require disclosures referred to in paragraphs (1) and (2) to be made in the manner existing prior to the date of enactment of this Act upon passenger request.

...